# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

IN RE:                                              :

LEISA J. RISBON,                                    :          Bankruptcy Case No. 99-5-4755-SD
    Debtor                          :

                                    :

v.                                                  :          Civil No. L-01-2026

                                    :

COLORADO STUDENT LOAN                               :
PROGRAM                                             :

## ORDER

This is an appeal of proceedings in bankruptcy before the Honorable E. Stephen Derby.

In an order dated May 21, 2001, the bankruptcy court discharged a portion of Appellee Leisa J.

Risbon's student loan obligations under 11 U.S.C. § 523(a)(8). For the reasons stated below, the

Court AFFIRMS the bankruptcy court's decision.

## I.    Background

Ms. Risbon attended the Denver Business College and was trained as a paralegal. To

enable her to attend the school, Ms. Risbon borrowed a total of $14,228.[1] She was, however,

unable to obtain employment as a paralegal. Prospective employers required several years of

experience, which Ms. Risbon did not have. For several years, therefore, Ms. Risbon worked as

a dispatcher for an alarm company in Colorado. Her salary was $33,000 per year and she was

able to make payments on her loans for nearly three years.

In January 1999, Ms. Risbon moved to Maryland. Ms. Risbon is a diabetic and she

moved to Maryland to be closer to her mother, who is also a diabetic. She obtained a job as a

---

[1]Ms. Risbon actually has three loans which together totaled $14,228. The total loan
balance on May 15, 2001 was approximately $15,612.



supervising operator with an answering service. It is similar work to that which she was doing in Colorado; however, the salary is significantly lower. Her income for the year 2000 was $20,543.

Shortly after moving to Maryland, Ms. Risbon filed for bankruptcy under Chapter 7. As part of that process, she sought the discharge of her student loans. Colorado Student Loan Program ("CSLP") contended that her student loans were non-dischargeable.

Judge Derby held an evidentiary hearing during which Ms. Risbon testified about her prospects for employment, her income, her education and her health. While neither she nor CSLP produced any schedules, account records, or summaries of Ms. Risbon's expenditures, she did testify orally on the subject. She enumerated her expenses including, among others, those for rent, food, utilities, medication, and car payments. Counsel for CSLP had an opportunity to fully cross-examine Ms. Risbon, and Judge Derby himself questioned her about her education, employment opportunities, health restrictions and medical expenses.

Following the hearing, Judge Derby issued a brief written opinion titled "Order Determining Dischargeability of Student Loans." Among other findings, Derby concluded:

(i)     Ms. Risbon had made a good faith effort to repay her guaranteed student loans.

(ii)    The present state of Ms. Risbon's financial affairs was likely to persist for a significant portion of the repayment period for her student loans.

(iii)   Judge Derby accepted as truthful Ms. Risbon's testimony as to her financial affairs and accepted that the monthly expenditures to which she testified, with a few exceptions noted by the court, are "only those necessary for her to maintain a minimal standard of living."

(iv)    After making an allowance for contingencies (unexpected expenditures) and clothing, and recognizing that certain expenses for cable and internet access were discretionary, the bankruptcy court concluded that the "Debtor could pay up to $50 per month toward her student loans, without incurring an undue hardship."

(v)     Because Ms. Risbon's financial condition was not likely to improve materially over the term of the loan, CSLP's graduated repayment option would impose an

undue hardship.

Accordingly, on May 21, 2001, Judge Derby ordered that:

(i)    One or more of Debtor's three student loans held by Defendant are not dischargeable to the extent that their aggregate monthly payments do not exceed $50 per month for a term not to exceed 180 months to repay the loan or loans in full;

(ii)   Defendant is granted 30 days to identify said loan or loans and the repayment terms for each by a filing in this adversary proceeding, failing which all three of Debtor's student loans shall be deemed discharged;[2] and

(iii)  The balance of Debtor's student loans held by Defendant are discharged.

On appeal, CSLP generally contends that: (i) Judge Derby erred in concluding that Ms. Risbon could only pay $50 per month without undue hardship; (ii) Judge Derby should have concluded that because Ms. Risbon's income was voluntarily reduced through her move to Maryland, she should not benefit through a discharge of her student loans; and (iii) Judge Derby erred by exceeding his authority by stating he would discharge all three loans if CSLP failed to submit required schedules within 30 days.

## II.    Applicable Law and Standard of Review

As distinguished from most forms of unsecured debt, student loans are presumptively nondischargeable. An exception exists, however, if repaying the loans will place an undue hardship on the debtor and the debtor's dependants. 11 U.S.C. § 523(a)(8). Courts have adopted a standard for "undue hardship," which requires a three-part showing: (i) that the debtor cannot maintain, based on current income and expenses, a "minimal" standard of living for himself and his dependents if forced to repay the loans; (ii) that additional circumstances exist indicating that

---

[2] Because Ms. Risbon had three loans, it was necessary for CSLP to specify how Ms. Risbon's $50 payments would be allocated among them.

this state of affairs is likely to persist for a significant portion of the repayment period of the student loans; and (iii) that the debtor has made good faith efforts to repay the loans. Brunner v. N.Y. Higher Educ. Serv. Corp., 831 F.2d 395, 396 (2d Cir. 1987). The bankruptcy court's findings of fact relevant to the debtor's claim of undue hardship are to be affirmed unless clearly erroneous. In Re: Ammirati, 187 B.R. 902, 906 (D.S.C. 1995). Questions of law are reviewed *de novo.* Id.

Whether this appeal involves a finding of fact or law is complex. Findings concerning debtor's finances are essentially fact driven and require an assessment of her income, expenditures, job potential, education and lifestyle. Because the concept of "undue hardship" embodies a legal test, however, this Court has the discretion to determine whether the facts, as the bankruptcy court reasonably found them, meet the legal definition of "undue hardship." Id.

III.    Discussion

A.    Judge Derby's determination that Ms. Risbon could only afford to pay $50 per month toward her student loans was not erroneous

Ms. Risbon's salary in the year 2000 was $20,543, which is not a great deal of money. She testified as to her income and expenses at the hearing, and Judge Derby determined that she could pay no more than $50 per month without undue hardship. CSLP contends, however, that her income exceeded her expenses by between $81.42 and $141.42 per month, meaning that she could afford to pay more. CSLP further contends that when Ms. Risbon's car was paid off six months after the hearing, the excess would increase to between $257 and $317.

This argument, however, is not persuasive because Judge Derby made additional allowances for "contingencies and clothes." Moreover, although there was an examination of Ms. Risbon's income and expenses, the examination was not exhaustive. An experienced and

4

capable bankruptcy judge, like Judge Derby, would have an appreciation of the cost of the necessary living expenditures that were omitted from testimony. Finally, although Ms. Risbon has health insurance, she testified that due to lack of funds, she was not purchasing all the physician-recommended health supplies required for the treatment of her diabetes.[3]

Based upon this testimony, it is impossible for this Court to conclude that Judge Derby's findings were clearly erroneous, or erroneous in any degree.

**B.    Judge Derby's discharge of Ms. Risbon's student loans was not erroneous, even though the decrease in her salary was self-imposed**

It is true that a person may not systematically pauperize herself in order to defeat her creditors. For example, a Court should not countenance a person's refusal to obtain gainful employment in order to avoid paying alimony or child support. But, such is not the case here.

Judge Derby, who was in a position to hear the evidence, concluded that Ms. Risbon had made a "good faith" effort to repay her loans. She relocated, not to pauperize herself, but to be near her mother who has a serious medical condition. Ms. Risbon's employment options are limited because she does not have a college degree, she lacks computer training, and her health limitations exclude Ms. Risbon from ceratin occupations that require strenuous labor or even standing for long periods of time.[4] Thus, there is no evidence that Ms. Risbon declined to pursue higher paying jobs that were readily available to her in the market place. Moreover, the job that she obtained in Maryland, while lower paying, does provide medical benefits, which is a significant form of contribution for a person with diabetes.

Accordingly, Judge Derby was correct in measuring Ms. Risbon's ability to pay against

---

[3]Ms. Risbon could not afford to purchase her "test strips" which cost $60 per 100 strips.

[4]For example, Ms. Risbon could not waitress or work in a department store.

her current income. He was not required to increase her monthly income to reflect what she would be earning if she had stayed in Colorado.

> **C.    Judge Derby did not exceed his authority by stating that he would discharge all three of Ms. Risbon's loans if CSLP failed to submit required schedules within 30 days**

A bankruptcy court has the authority to require litigants to submit briefs, schedules and other papers. For proper case management, Judge Derby reasonably required CSLP to analyze Ms. Risbon's three loans and state how her $50 payments should be applied.[5]

Judge Derby's request was logical because under the terms of the Order, the loans were discharged to the extent that they exceeded the aggregate payments of $50 per month for 180 months. The bankruptcy court, therefore, needed to know what portion of the loans would be discharged and what portion would not.

It is incumbent on CSLP to assist Judge Derby by providing the necessary schedules. If CSLP should defiantly decline to do so, then Judge Derby would have the power to discharge the full amount of the loans as an appropriate penalty.

The record is unclear whether the sanction has taken effect, or whether the appeal stayed the Order. Whatever the current situation is, this Court suggests that CSLP comply promptly with its obligations under the Order.

## IV.    Conclusion

This Court is loathe to reverse the determination made by a fact finder who (i) applied the correct legal standard, and (ii) made a thorough review of the factual record. Judge Derby

---

[5]Judge Derby should not be expected to make this calculation himself, particularly because there might be tax or other implications. Judge Derby directed CSLP to provide such schedules within 30 days. If CSLP failed to comply with this reasonable order, then Judge Derby could, as a sanction, discharge all three of Ms. Risbon's student loans.

concluded, after reviewing Ms. Risbon's individual financial circumstances, that requiring her to

pay anything over $50 per month for 180 months would subject her to undue hardship.

Accordingly, the Court AFFIRMS the bankruptcy court's ruling.


It is so ORDERED this 30th day of September, 2002.



Benson Everett Legg
United States District Judge



MICROFILMED

SEP 2002